IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| JAMES B. SHERWOOD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:23-cv-00005 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| VALLEY HEALTH SYSTEM, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Court |
| Defendant. | ) | |

Plaintiff James B. Sherwood ("Sherwood"), a former employee of Defendant Valley Health System ("VHS"), brings this declaratory action to determine the obligations owed under the terms of a severance benefit plan after he was involuntarily terminated from his employment. The matter is now before the court on VHS's motion to strike (ECF No. 7), motion to dismiss (ECF No. 8), and motion for costs (ECF No. 10). The motions were fully briefed by the parties, and the court held oral argument on March 29, 2023, making the matter ripe for decision. For the reasons explained below, the court will grant in part and deny in part VHS's motion to dismiss, deny its motion for costs, and take its motion to strike under advisement.

## I.   BACKGROUND

According to the Complaint, VHS hired Sherwood in August 2015 as Vice President of Operations and Professional Services at Winchester Medical Center ("WMC"). (Compl. ¶ 13 [ECF No. 3].) Sherwood continued to work in that capacity until January 2021, when he was notified that his position would be terminated, effective March 31, 2021. (*Id.* ¶ 23.) Thereafter, VHS issued Sherwood an Initial Severance Agreement ("ISA") which provided

that Sherwood would help transition his responsibilities until his position was officially eliminated in March. (*Id.* ¶ 23; Pl.'s Ex. B p. 19 [ECF No. 3-3].) And, until March 31, 2021, Sherwood would be paid his regular salary. (*Id.*; Pl.'s Ex. B at 21.) The ISA further required Sherwood to release any right to reinstatement or to pursue various legal claims and included provisions for non-disparagement and confidentiality; it also specified liquidated damages of $10,000 per breach of the ISA. (*Id.* ¶ 24; Pl.'s Ex. B at 22–24.)

After issuing the ISA to Sherwood, VHS employed Wiederhold Associates, a job placement and consulting firm, to assist Sherwood with job placement. (*Id.* ¶ 34.) With the aid of Wiederhold Associates and a referral from Gray Phillips—Sherwood's former supervisor, Vice President of VHS Acute Hospitals, and President of WMC—Sherwood interviewed for, and was soon offered the position of, Vice President of Business Development and Strategy at Frederick Health in Frederick, Maryland, on or about April 1, 2021. (*Id.* ¶ 37.)

Around that time, as Sherwood's position at VHS was effectively terminated, VHS issued Sherwood a Secondary Severance Agreement ("SSA"), which he executed on April 8, 2021. (*Id.* ¶ 25; *see* Pl.'s Ex. B at 28–36.) The SSA mostly reiterated the ISA's release provisions, but it also provided that Sherwood would be entitled to severance benefits under the Valley Health Severance Benefit Plan (the "Plan"). (*Id.* ¶ 26; *see* Pl.'s Ex. B at 30.) The Plan provided that VHS would pay Sherwood $23,750 per month over the course of six months,[1] beginning 45 days after his position officially terminated on March 31, 2021. (*Id.* ¶¶ 27, 28; Pl.'s Ex. B at 39–40.) But the Plan also contained a forfeiture provision whereby Sherwood would forfeit his monthly payments if he engaged in any "Disqualifying Activities" as set forth in Exhibit A

---

[1] As a "Tier 3" participant, Sherwood's severance pay amounted to half of his annual salary. (Compl. ¶ 27.)

of the Plan. (*Id.* ¶ 29; Pl.'s Ex. B at 49.) Specifically, the Plan defined "Disqualifying Activities" as:

> Whether as a partner, officer, employee, manager, consultant, or otherwise, within a 70-mile radius of [WMC], performs services or consults with respect to the performance of services in a Covered Capacity for any organization that has any purpose or business activities of [VHS] or any division of [VHS], and which competes with [VHS]. Covered Capacity means: (i) any capacity which involves the performance of tasks substantially similar to those performed by [Sherwood] for [VHS] at any time within eighteen months immediately prior to the Involuntary Separation from Services; or (ii) any capacity which involves the management or supervision of any function for which [Sherwood] was responsible while employed by [VHS] at any time within the eighteen months immediately prior to the Involuntary Separation from Service. By way of example . . . organizations that have similar purposes to and compete with [VHS] include hospitals, health care systems, physician management organizations, physician practices and managed care organizations.

(*Id.* ¶ 30; Pl.'s Ex. B at 48.)

With the Plan provisions in mind, Sherwood spoke with Phillips before he accepted the Frederick Health position because Phillips allegedly had knowledge of and influence on the Plan. (*Id.* ¶ 39.) After Sherwood briefed Phillips on the circumstances of his new job opportunity, Phillips allegedly told Sherwood that he did not see any conflict with Sherwood taking the position with Fredrick Health, which is located approximately 55 miles from WMC. (*Id.*)

On April 6, 2021, however, Sherwood received an email from Elizabeth Savage, Chief HR Officer for VHS, stating that she had spoken to Phillips and Mark Nantz, VHS CEO, and that VHS was unable to lift the non-compete condition for Frederick Health. (*Id.* ¶ 40.) The email added that, "[i]f [Sherwood] accept[ed] an offer with an organization outside of the 70-

mile radius, then the severance would be applicable." (*Id.*) At the time of Savage's email, Sherwood alleges that neither Savage nor Nantz had any information from Sherwood as to his new job duties at Frederick Health, or whether VHS and Frederick Health were, in fact, competitors within the meaning of the Plan. (*Id.* ¶ 41.)

Thereafter, Sherwood received severance pay for the month of April and began working at Frederick Health on May 3, 2021. (*Id.* ¶ 42.) The next day, however, Savage sent Sherwood a letter stating that he had forfeited his severance benefits due to his work at Frederick Health. (*Id.* ¶ 43; Pl.'s Ex. A p. 6 [ECF No. 3-2].)

Following the termination of his severance benefits, Sherwood filed a complaint in the Circuit Court for the City of Winchester, seeking a determination that the non-compete provision of the Plan was unenforceable under Virginia common law. (*Id.* ¶ 44; Pl.'s Ex. A at 13–28.) VHS then removed the action to this court and moved to dismiss the complaint, but Sherwood voluntarily dismissed his case pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). (*Id.* ¶ 45; Pl.'s Ex. A at 8.)

Despite Sherwood's voluntary dismissal of his complaint, Savage, by letter dated May 28, 2021, advised Sherwood that she elected to treat his complaint as a claim for benefits under the Plan and denied that claim. (*Id.* ¶ 46; Pl.'s Ex. A at 10.) Savage also advised Sherwood that he could file a claim to appeal the denial of his benefits with the Plan administrator. (*Id.*) On June 24, 2021, Sherwood filed his first administrative appeal. (*Id.* ¶ 47; Pl.'s Ex. A at 3–18.) VHS's inhouse counsel, Walter P. Sowers, on behalf of VHS's Plan Administrator, denied Sherwood's appeal by letter dated October 22, 2021. (*Id.* ¶ 48; Pl.'s Ex. C p. 2–5 [ECF No. 3-4].) In a letter dated December 21, 2021, Sherwood sought an appeal of VHS's October 22

decision denying his severance benefits. (*Id.* ¶ 49; Pl.'s Ex. D p. 2–6 [ECF No. 3-5].) Savage, acting as the VHS Plan Administrator, again denied Sherwood's appeal by letter dated April 20, 2022. (*Id.* ¶ 50; Pl.'s Ex. E p. 2–25, 26–39, 41–110 [ECF No. 3-6].)

Sherwood subsequently filed this action on January 25, 2023 (*See* ECF No. 3),[2] seeking a declaration that the Plan is violative of Virginia law and not covered by the Employee Retirement Income Security Act ("ERISA") (Count I); in the alternative, if the Plan is covered by ERISA, Sherwood seeks a declaration that the decision to terminate his severance benefits violated federal law (Count II). (Compl. ¶¶ 91–128.)  VHS has since moved this court to strike several paragraphs of Sherwood's complaint (ECF No. 7); to dismiss Sherwood's complaint in its entirety (ECF No. 8); and to grant VHS reasonable costs stemming from Sherwood's voluntary dismissal of the previous action (ECF No. 10). For the reasons explained below, the court will grant in part and deny in part VHS's motion to dismiss, take its motion to strike under advisement, and deny its motion for costs.

## II.   ANALYSIS

### A.  Motion to Dismiss

VHS argues that Sherwood's claim for severance benefits is preempted by ERISA and that VHS did not abuse its discretion by determining that Sherwood's employment with Frederick Health triggered the Plan's forfeiture provision. (Def.'s Mem. Supp. Mot. Dismiss p. 6, 9 [ECF No. 9].)

---

[2] Sherwood's operative complaint contains several redacted paragraphs. Specifically, paragraphs 12 and 15–22 have been filed under seal and will not be referred to specifically. (*See* ECF No. 3.)

1.  **Standard for Motion to Dismiss**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining facial plausibility, the court must accept all factual allegations in the complaint as true. *Id.* The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). Therefore, the complaint must "allege facts sufficient to state all the elements of [the] claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

2.  **Whether The VHS Plan is Governed by ERISA**

As an initial matter, the court must determine whether the Plan is an employee welfare benefit plan within the meaning of ERISA, or whether it is merely a severance agreement between VHS and Sherwood and, as such, governed by Virginia law. If the Plan is governed by ERISA, Sherwood "does not contest that ERISA preempts his state law claims." (Pl.'s Br. Opp. p. 7 [ECF No. 16].)

ERISA applies to "any employee benefit plan established or maintained by any employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C.

§ 1003(a). To determine that the VHS Plan is an employee benefit plan, the court must find that it is a plan, fund, or program established or maintained by an employer for the purpose of providing either, or both, employee welfare benefits and employee pension benefits to employees. *See* 29 U.S.C. § 1002(1) and 1002(2)(A). As relevant here, an "employee welfare benefit plan" or "welfare plan" is

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions.[3]

29 U.S.C. § 1002(1).

In the severance benefits context, "[a]n employee benefit arrangement constitutes a 'plan' governed by ERISA where the payment of benefits 'requires an ongoing administrative program to meet the employer's obligation.'" *Anderson v. Bank of Hampton Roads, Inc.*, No. 2:15CV323, 2015 WL 12806531, at *2 (E.D. Va. Nov. 6, 2015) (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987)). In keeping with the broad scope of ERISA, the Supreme Court has explained that the requirement of an ongoing administrative scheme is "minimal." *D.C. v. Greater Washington Bd. of Trade*, 506 U.S. 125, 130 n.2 (1992). But the Fourth Circuit has

---

[3] The ERISA definition refers to benefits in § 302(c) of the Labor Management Relations Act, codified at 29 U.S.C. § 186(c). In the applicable regulations, the Secretary says 29 U.S.C. § 186(c), duplicates to a large extent the benefits enumerated in 29 U.S.C. § 1002(1)(A), except that 29 U.S.C. § 186(c), adds holiday and severance benefits. 29 C.F.R. § 2510.3-1(a)(3).

not explicitly developed an analytical framework for determining whether a program requires an ongoing administrative program. As such, district courts in this circuit have adopted a variety of factors to consider, including:

> (1) the amount of managerial discretion granted in paying the benefits and whether a case-by-case review of employees is needed; (2) whether payments are triggered by a single, unique event in the course of business or on a recuring basis; (3) whether the employer must make a one-time, lump-sum payment or continuous, periodic payments; and (4) whether the employer undertook any long-term obligations with respect to payments.

*Mullaly v. Ins. Servs. Off., Inc.*, 395 F. Supp. 2d 290, 295 (M.D.N.C. 2005) (collecting cases); *see also Anderson*, 2015 WL 12806531, at *2. After considering the so-called *Mullaly* factors, the court finds that the VHS Plan requires an ongoing administrative program and is governed by ERISA.

### i.    The Amount of VHS's Discretion

"The more discretion that an employer has in determining whether the employee is entitled to benefits and in paying the benefits, the more likely it is that the employment arrangement at issue requires an ongoing administrative scheme." *Anderson*, 2015 WL 12806531, at *3; *see Blair v. Young Phillips Corp.*, 158 F. Supp. 2d 654, 659 (M.D.N.C. 2001). "On the other hand, simple or mechanical determinations requiring no discretion by the employer weigh against finding an ERISA plan." *Caffrey v. Four Oaks Bank & Trust Co.*, No. 5:10CV341, 2011 WL 2580674, at *5 (E.D.N.C. Jun. 29, 2011).

Here, the VHS Plan provides that a participant is only eligible to receive severance benefits if he "experiences a Separation from Service under an Involuntary Separation from Service without Reasonable Cause[.]" (Pl.'s Ex. B at 39.) The Plan defines "Reasonable Cause"

as, among other things, a "failure to substantially perform (for reasons other than Disability) the duties reasonably assigned or appropriate to the position, in manner reasonably consistent with prior practice[.]" (*Id.* at 37.) But the Plan does not define "substantially perform," "reasonably assigned," "appropriate," or "reasonably consistent with prior practice," leaving VHS to apply those terms on a case-by-case basis. *See Mullaly*, 395 F. Supp. 2d at 295 ("[T]he SAP does not define 'willful unsatisfactory performance' or 'offensive behavior,' leaving those terms to be applied by [d]efendant on a case-by-case basis.").

Indeed, VHS would be required to apply these undefined terms specifically to Sherwood to determine whether he was, in fact, terminated without "Reasonable Cause" before he would be considered eligible for severance payments under the Plan. And "courts across the country have held the discretion of determining the cause of termination to be a factor heavily favoring an ERISA plan." *Id.*; *see Simas v. Quaker Fabric Corp. of Fall River*, 6 F.3d 849, 853 (1st Cir. 1993) ("The 'for cause' determination, in particular, is likely to provoke controversy and call for judgments based on information well beyond the employee's date of hiring and termination."); *Blair*, 158 F. Supp. 2d at 659–60 (remarking that a "for cause" determination in a severance plan is a considerable factor implicating ERISA); *Darlin v. Consolidated Rail Corp.*, 93 F. Supp. 2d 599, 601 (E.D. Pa. 2000) (finding an ERISA plan where eligibility was restricted to employees who were terminated without cause).

Moreover, because the VHS Plan included numerous other participants (Pl.'s Ex. B at 49–50), VHS would need to maintain records and create an administrative process to ensure that it determined severance benefit eligibility in a fair and consistent manner with respect to its other qualifying employees. *See Yarber v. Cap. Bank*, 944 F. Supp. 2d 437, 444 (E.D.N.C.

2013); *Massachusetts v. Morash*, 490 U.S. 107, 116 (1989) ("[P]lans to pay employees severance benefits, which are payable *only* upon termination of employment, are employee welfare benefit plans within the meaning of [ERISA]."). Accordingly, this factor weighs in favor of finding an ERISA plan.

### ii.   Whether a Single, Unique Event Triggers Payment

As to the second factor, "[i]f payments are not triggered by a single event, . . . courts are more likely to find that an ongoing administrative scheme is necessary to meet the employer's obligation." *Anderson*, 2015 WL 12806531, at *4. Here, payment of severance benefits under the VHS Plan is not premised on the occurrence of a single event, as was at issue in *Fort Halifax*. *See Fort Halifax*, 482 U.S. at 12 (holding that payment of benefits upon the occurrence of a single event indicates the lack of an administrative scheme). Instead, because the VHS Plan applies to numerous other participants upon their involuntary termination, VHS's "obligations are recurring as employees are terminated, which necessarily requires some ongoing administration." *Mullaly*, 395 F. Supp. 2d at 296; *see Ebenstein v. Ericsson Internet Applications, Inc.*, 263 F. Supp. 2d 636, 642 (E.D.N.Y. 2003) ("Notably, the [] agreement applies to all employees and was not drafted for a single event such as a plant closing. As such, the plan can reasonably be interpreted as an ongoing commitment on the part of the Company."). This factor also weighs in favor of finding an ERISA plan.

### iii.   Number of Payments

Under the third factor, if an "employer is required to make a single lump-sum payment as opposed to continuous, periodic payments, courts are more likely to find that an ongoing administrative scheme is not necessary to meet the employer's obligations." *Anderson*, 2015 WL 12806531, at *4; *see Fort Halifax*, 482 U.S. at 12 ("The requirement of a one-time, lump-

sum payment . . . requires no administrative scheme whatsoever to meet the employer's obligation."). Here, the Plan requires VHS to make continuous, periodic payments to eligible participants based on their Participant Group and the nonoccurrence of death or Disqualifying Actions. (Pl.'s Ex. B at 41.) Indeed, depending on which Participant Group an involuntarily terminated employee falls within, VHS could be obligated to make monthly payments for up to 24 months. (*See id.* at 40.) Because Sherwood is a "Tier 3" participant under the Plan, VHS was obligated to make 6 monthly payments to him, depending on his activities during the severance pay period. (*Id.* at 40, 41.) As such, the instant circumstances are a far cry from a "one-time, lump-sum payment triggered by a single event [that] requires no administrative scheme whatsoever to meet the employer's obligation." *Fort Halifax*, 482 U.S. at 12.

Moreover, VHS exercises inherent discretion in determining whether a Plan participants' actions foreclose their eligibility to receive severance payments under the Plan, as was the case when VHS decided that Sherwood engaged in Disqualifying Actions during his severance payment period. And it is beyond reasonable dispute that an ongoing administrative scheme is necessary for VHS to meet these varying obligations on a case-by-case basis with respect to its other qualifying employees. Accordingly, this factor cuts in favor of finding an ERISA plan.

### iv.   VHS's Long-Term Obligations

Under the final factor, a severance benefit arrangement that creates continued obligations on the part of the employer is more likely to require the creation of an ongoing administrative scheme and is, therefore, more likely to be governed by ERISA. *Anderson*, 2015 WL 12806531, at *5; *see Caffrey*, 2011 WL 2580674, at 4–5. Once Sherwood was determined to

be eligible for benefits under the VHS Plan, VHS was obligated to determine, on an ongoing basis, whether he engaged in a Disqualifying Activity during the severance pay period. (Pl.'s Ex. B at 48.) Specifically, once Sherwood accepted employment with Frederick Health, VHS had to determine whether Sherwood's new position required him to perform services in a "Covered Capacity for any organization that has any purpose or business activity that is substantially similar to a purpose or business activity of [VHS] or any division of [VHS]" in order to determine whether Sherwood forfeited his right to severance benefits during the payment period. (*Id.*) Moreover, Plan administration does not end once a payment period ends. Indeed, Sherwood's final administrative appeal was denied in April of 2022, meaning that VHS's administration over his claim for benefits lasted longer than his actual six-month payment period. (Compl. ¶ 50; Pl.'s Ex. E p. 2–25, 26–39, 41–110.)

Additionally, the Plan does not administer only Sherwood; it applies to at least 36 qualifying employees, meaning that VHS has continuing obligations to administer the Plan as those employees are terminated at different times, for different reasons (with or without reasonable cause), and with different payment timeframes and attendant obligations. (Pl.'s Ex. B at 49–50.) For example, if VHS's president and CEO was involuntarily terminated without reasonable cause, VHS would be obligated to make payments over the course of two years, while making ongoing determinations regarding whether that employee engaged in disqualifying actions. (*See* Pl.'s Ex. B at 49.) As such, the fourth factor weighs in favor of finding an ERISA Plan.

### v.   Conclusion

In sum, the court finds that all four factors weigh in favor of finding an ERISA Plan.[4] Accordingly, as Sherwood concedes, his claim for benefits is preempted by ERISA and governed by federal law. The court, therefore, must analyze Sherwood's alternative claim for benefits according to the appropriate principles of federal law.

### 3.   Denial of Sherwood's Benefits Under ERISA

This court reviews denials of ERISA benefits "under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "If such discretionary authority is conferred, the courts' review is for abuse of discretion." *Woods v. Prudential Ins. Co. of Am.*, 528 F.3d 320, 322 (4th Cir. 2008). Because Sherwood "does not dispute that the Plan gives the administrator . . . discretionary authority

---

[4] In resisting this conclusion, Sherwood heavily relies on the holdings of *Anderson v. Bank of Hampton Roads, Inc.*, No. 2:15cv323, 2015 WL 12806531 (E.D. Va. Nov. 6, 2015), and *Venezuela v. Massimo Zanetti Beverage USA, Inc.*, 525 F. Supp. 2d 781 (E.D. Va. 2007), but both cases are readily distinguishable. In *Anderson*, a former vice president of a bank sued to recover severance benefits stemming from her employment contract with the bank. *Anderson*, 2015 WL 12806531, at *1. In determining that payment of the plaintiff's severance benefits did not require an ongoing administrative scheme, the court found that the employment agreement contained detailed formula for determining the amount of severance benefits owed, which required no discretion, defined all critical terms, and applied to only one employee. *Id.* at *1, 3–4. Similarly, in *Venezuela*, a former vice president of a beverage company sued his former employer to recover severance benefits pursuant to the terms of his employment agreement with the company. 525 F. Supp. 2d at 784. In holding that the payment of severance benefits did not require an ongoing administrative program, the court determined that the critical terms were defined in the agreement, it was unclear whether payments were made in a single lump-sum payment, and the employment agreement only applied to one person. *Id.* at 784, 790–792.

Contrary to both *Anderson* and *Venezuela*, the VHS Plan does not define all essential terms, applies to at least 36 qualifying employees, and provides that severance benefits are paid over a range of 6 to 24 months depending on which "tier" a participant falls within. Moreover, VHS's administration over the Plan did not end with its determination that Sherwood engaged in Disqualifying Activity. Instead, VHS maintains continuing obligations to administer the Plan as qualifying employees are terminated on a continuing basis, on differing dates, for differing reasons, and are provided payments in varying amounts for varying time-periods.

in this case" (Pl.'s Br. Opp. at 13), the court must review the denial of Sherwood's benefits for abuse of discretion.

In reviewing the discretionary decision of a plan administrator to deny employee benefits, however, judicial review is limited to the body of evidence that was before the administrator at the time it rejected the claim. *Elliott v. Sara Lee Corp.,* 190 F.3d 601, 608–09 (4th Cir. 1999). Here, it is not apparent that the entire administrative record has been attached to Sherwood's complaint or is otherwise properly before the court at this early stage. And while courts can decide ERISA claims for benefits on a motion to dismiss, the court believes that disposition of this legal question is more procedurally appropriate for summary judgment with the benefit of a complete factual record.

Accordingly, the court will grant in part and deny in part VHS's motion to dismiss. Specifically, VHS's motion is granted as to Count I and denied as to Count II. The court will enter a scheduling order to control the disposition of this case after considering the parties' respective positions on the matter. If further discovery is not requested or required, the parties will be expected to file their respective motions for summary judgment within 45 days.

## B. Motion to Strike

VHS argues that paragraphs 12 and 15–22 of Sherwood's sealed complaint should be stricken because they are irrelevant to the present action, immaterial, and scandalous. (Def.'s Mot. Strike p. 3, 5 [ECF No. 7].)

While Federal Rule of Civil Procedure 12(f) permits district courts to strike "from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter," the court does not have enough information to determine whether the challenged paragraphs of Sherwood's

unredacted complaint are impertinent or immaterial. Specifically, the court believes that some of the challenged paragraphs may be relevant to whether CEO Nantz had a conflict of interest in exercising influence over the Plan and its administration. As such, the court will take VHS's motion to strike under advisement pending the outcome of limited discovery on the issue of whether VHS abused its discretion when it discontinued Sherwood's benefits. In the meantime, the allegations that are subject to the motion to strike will remain under seal.

## C.  Motion for Costs

VHS also moves this court to reimburse its costs incurred in the former action voluntarily dismissed by Sherwood prior to his refiling of the instant action. (Def.'s Mot. Costs p. 1 [ECF No. 10].)

Federal Rule of Civil Procedure 41(d) provides, "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied." Fed. R. Civ. P. 41(d). "As is apparent from the text, Rule 41 does not explicitly permit attorneys['] fees." *Andrews v. Am.'s Living Centers, LLC*, 827 F.3d 306, 309 (4th Cir. 2016). But courts have generally considered that the purpose of Rule 41(d) is "to serve as a deterrent to forum shopping and vexatious litigation." *Simeone v. First Bank Nat'l Ass'n*, 971 F.2d 103, 108 (8th Cir. 1992); *see also Esposito v. Piatrowski*, 223 F.3d 497, 501 (7th Cir. 2000) (citing *Simeone*, 971 F.2d at 108). This includes attempts to "gain any tactical advantage by dismissing and refiling th[e] suit." *Rogers v. Wal–Mart Stores, Inc.*, 230 F.3d 868, 874 (6th Cir. 2000) (cleaned up). With this purpose in mind,

> Rule 41(d) does not provide for an award of attorneys' fees as a
> matter of right; instead, a district court may award attorneys' fees
> under this rule only where the underlying statute provides for
> attorneys' fees. A court may also, within its discretion, award
> attorneys' fees where it makes a specific finding that the plaintiff
> has acted "in bad faith, vexatiously, wantonly, or for oppressive
> reasons[.]"

*Andrews*, 827 F.3d at 311 (cleaned up). Here, the court finds that Sherwood's dismissal of his

previous action and subsequent filing of the instant suit were not pursued in bad faith,

vexatiously, or for oppressive reasons.[5] *See Andrews*, 827 F.3d at 312–13 (noting that the

plaintiff "dismissed the prior action in order to avoid negative rulings on the [d]efendants'

motion to dismiss," and that the court "would be hard-pressed to find that [plaintiff] was

acting without reason or cause."). As such, the court may only award attorneys' fees if the

underlying statute provides for such an award.

ERISA provides for the discretionary award of attorneys' fees and costs of an action

to parties who have "some degree of success on the merits." 29 U.S.C. § 1132(g)(1); *Hardt v.

Reliance Std. Life Ins. Co.*, 560 U.S. 242, 244 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S.

680, 694 (1983)). In the Fourth Circuit, if a party shows that it had "some degree of success

on the merits," its claims for attorneys' fees under ERISA are governed by the following five-

factor test:

> (1) degree of opposing parties' culpability or bad faith; (2) ability
> of opposing parties to satisfy an award of attorneys' fees; (3)
> whether an award of attorneys' fees against the opposing parties

---

[5] When questioned by the court at the March 29, 2023 hearing, Sherwood acknowledged that he exhausted his ERISA remedies with VHS *after* he dismissed his initial complaint, as his initial complaint did not assert a claim under ERISA. However, Sherwood did not concede any impermissible reason for dismissing his complaint. Instead, Sherwood admitted his error, dismissed his previous action to avoid forcing VHS to incur additional costs, and deferred to the proper avenue to pursue his claim. Moreover, given the nature of Sherwood's previous complaint, VHS was fully aware of Sherwood's position and the attendant arguments he would make once he refiled the present action, *after* he was permitted to exhaust his remedies *by VHS*.

> would deter other persons acting under similar circumstances; (4)
> whether the parties requesting attorneys' fees sought to benefit
> all participants and beneficiaries of an ERISA plan or to resolve
> a significant legal question regarding ERISA itself; and (5) the
> relative merits of the parties' positions.

*Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 635 (4th Cir. 2010) (quoting *Quesinberry v. Life Ins.*

*Co. of N. Am.*, 987 F.2d 1017, 1029 (4th Cir. 1993)). "The five[-]factor approach is not a rigid

test, but rather provides general guidelines for the district court in determining whether to

grant a request for attorneys' fees." *Quesinberry*, 987 F.2d at 1029 (cleaned up).

In exercising its discretion, the court declines to award attorneys' fees to VHS because

it has not had success on the merits. While Sherwood's initial complaint was dismissed, it was

dismissed by Sherwood as a matter of right pursuant to Federal Rule of Civil Procedure

41(a)(1)(A)(i). As such, VHS had no merits-based success simply because Sherwood dismissed

his prior suit.

Accordingly, VHS's motion for costs will be denied.

## III.   CONCLUSION

For these reasons, VHS's motion for costs will be denied, its motion to strike will be

taken under advisement, and its motion to dismiss will be granted as to Count I and denied as

to Count II. The court will enter a scheduling order to control the further disposition of this

action.

The clerk is directed to forward a copy of this Memorandum Opinion and the

accompanying Order to all counsel of record.

**ENTERED** this 10th day of April, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE